**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 0 7 2022

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CURTIS A. JOHNSON                                              PLAINTIFF

VS.                              CASE NO. 4:22-cv-977-KGB

PULASKI COUNTY SPECIAL SCHOOL DISTRICT
A Public Body Corporate                                       DEFENDANT

**COMPLAINT**

This case assigned to District Judge Baker
and to Magistrate Judge Ervin

Introduction

This is a civil rights action brought pursuant to Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C.S. § 1981 (as amended by the Civil Rights Act of 1991, which is codified at 28 U.S.C. § 1658), pursuant to 42 U.S.C. § 1983, pursuant to the Fourteenth Amendment to the United States Constitution and pursuant to the Arkansas Whistle-Blower Act (AWBA), as codified at Ark. Code Ann. § 21-1-601, *et seq.*, in order to recover damages against the defendant for the unlawful discriminatory employment practices that the plaintiff, Curtis A. Johnson, has been subjected to on account of his race. This is also an action for declaratory judgment pursuant to 28 U.S.C. § 2201 to declare the rights and other legal relations between the parties. The plaintiff is seeking equitable relief and injunctive relief as well.

I.
Jurisdiction

1.     Jurisdiction and venue of this Court are invoked pursuant to 28 U.S.C. §§ 1331, 1343, 1391, 42 U.S.C. §§ 2000e *et seq*. (Title VII of the Civil Rights Act of 1964, as amended), 42 U.S.C.S. § 1981, and 42 U.S.C.S. § 1983. The Court is also asked to assume supplemental jurisdiction over the plaintiff's state law claims.

1

2.      The unlawful employment practices alleged to have been committed against the plaintiff were committed in the State of Arkansas, and in the County of Pulaski.

## II.
## Parties

3.      The plaintiff Curtis A. Johnson is an African American male, and is a resident of the United States of America.

4.      The defendant Pulaski County School Special District is a public body corporate, pursuant to Ark. Code. Ann. § 6-13-102.

## III.
## Facts

5.      The plaintiff is employed by the Pulaski County Special School District as the Executive Director of Operations.

6.      As the Executive Director of Operations, the plaintiff is responsible for overseeing the district's safety and security, building operations, and maintenance.

7.      The plaintiff was hired by the PCSSD as the Executive Director of Operations on or about August 8, 2018.

8.       The person who preceded the plaintiff in the position of Executive Director of Operations was Derek Scott, who is a Caucasian male.

9.      The PCSSD has been involved as the principal defendant in the long-standing school desegregation case styled *Little Rock School District v. Pulaski County Special School District, et al.*, United States District Court No. 4:82-CV-00866 DPM.

2

10.     Down through the years, the defendant school district has been found to have discriminated against African Americans in hiring, promotion, and in committing acts of retaliation against those African Americans who have opposed discriminatory practices.

11.     In February 2022, the defendant school district was found to have committed unlawful employment practices against its Interim Superintendent – Dr. Janice Hargrove Warren, who is an African American female, in the case of *Janice Hargrove Warren v. Pulaski County Special School District*, United States District Court No. 4:19-CV-00655 BSM, when it failed to consider her for the vacant superintendent position that was awarded to a Caucasian male by the name of Dr. Charles McNulty.

12.     During the long-standing desegregation case as mentioned herein, the defendant school district was found to have been a constitutional violator in its treatment of African American students in student assignments, student discipline, and failing to provide equal educational opportunities to said students.

13.     The defendant was also found to have discriminated against African American students living in the southeast sector of Pulaski County, Arkansas, in its building facilities.

14.     The southeast sector of Pulaski County is an area that has a high concentration of African American communities, such as College Station, Sweet Home, Wrightsville, Higgins, and McAlmont.

15.     The schools in the above-mentioned areas located in the southeast sector of Pulaski County have older schools, that have been neglected down through the years, which has resulted in schools that are structurally inferior to those schools in northern and western Pulaski County, Arkansas, which includes schools in communities such as Jacksonville, Sherwood, Oak Grove, and Maumelle.

16.     Students having to attend inferior schools are negatively impacted in their educational experience, which contributes to disparities in the educational achievement gap between the district's black and white students.

17.     The federal judge overseeing the school desegregation case ordered the defendant school district to take steps to address the obvious inequities that exist in its facilities located in the southeast sector, by requiring new school construction, and school rehabilitation.

18.     Pursuant to the federal court mandate, during the latter part of 2016, the defendant school district began construction on the new Mills High School, which is a feeder for children living in the southeast sector of Pulaski County, Arkansas.

19.     The school district also started construction during the same time period on the new Robinson Middle School, which is located on Highway 10, in western Pulaski County, Arkansas

20.     Prior to the plaintiff being employed as the Executive Director of Operations, the position was assigned to Derek Scott.

21.     It was later discovered that during the spring of 2017, Derek Scott had diverted funds away from the Mills High School project, and used those funds on the Robinson Middle School construction project, which resulted in a glaring disparity between those two (2) projects, and became apparent during the summer of 2017, once the construction of the schools were entering their final stages.

22.     This apparent inequity that existed between the Robinson Middle School project and the Mills High School project, caused the district to be in violation of the court's order, as well as not complying with *Plan 2000*.[1]

---

[1] *Plan 2000* was approved by The Honorable Susan Webber Wright back in February 2000, which is a document that the parties to the desegregation case (Joshua Intervenors, Little Rock School District, North Little Rock School District, and Pulaski County Special School District) developed which set goals and benchmarks to assist the school districts in reaching unitary status.

23.     Dr. Janice Warren was serving as interim superintendent, and as part of her job duties and obligations to the court, notified Sam Jones, who at the time was representing the school district in the desegregation case, brought this inequity to the attention of Mr. Jones sometime in August 2017.

24.     Mr. Jones then filed a supplemental facilities report with the court on September 5, 2017 [**Doc. # 5322**], notifying the court and the parties about the apparent disparities that exist in the two school construction projects.

25.     The PCSSD's supplemental report as filed by Sam Jones indicated that the Mills Construction project was supposed to have been for a total construction cost of $56,265,000.00, with $5,000,000.00 being used to convert the old Mills High School into the Mills Middle School.

26.     However, the supplemental filing indicated that the architects for the Mills High School construction projects were directed by [Derek Scott] to scale back to the construction project to $35,000,000.00.

27.     The supplemental filing by Sam Jones, which was prepared with the assistance of Dr. Janice Warren, then interim superintendent, caused anger among members of the newly instituted school board of education, which was led by Dr. Linda Remele, a Caucasian female.

28.     Both Dr. Linda Remele and Alicia Gillen, another Caucasian board member, were upset over the filing of the supplemental report.

29.     At a school board meeting that took place on or about September 8, 2017, Dr. Remele expressed her anger about the filing of the supplemental report with the court, which was reported in the *Arkansas Democrat/Gazette*, and told Dr. Warren that "we do not air our dirty laundry in public."

30.      Despite having been praised for her work in opening the new schools during the Fall of 2017, a month later, the PCSSD announced that they were hiring a national search firm to search for a new district superintendent.

31.      Immediately after the September 8, 2017 board meeting, Dr. Remele and Ms. Gillian also started a campaign of documenting things that they allegedly did not like about Dr. Warren, all in an effort to justify denying her the position of superintendent.

32.      The PCSSD was found by a jury to have violated Dr. Janice Warren's civil rights when it retaliated against her, by not selecting her for the superintendent's position that was awarded to Dr. McNulty in or about April 2018.[2]

Unitary Status Hearings

33.      On July 18, 2019, Judge D. Price Marshall set a bench trial on the desegregation case for the Pulaski County Special School District's case to begin during the week of July 14, 2020.

34.      On October 24, 2019, the Pulaski County Special School District as well as the Jacksonville/North Pulaski School District filed notices concerning unitary status [**Doc. Nos. 5533 and 5534**].

35.      On October 29, 2019, the Court converted the hearing set for the week of July 14, 2020, to that of a unitary status hearing, to determine whether the Pulaski County Special School District had achieved unitary status, which is what the school district desperately wanted.

36.      In preparation for the unitary status hearing, the parties engaged in discovery, and undersigned counsel took the depositions of Dr. Janice Warren and the plaintiff Curtis Johnson.

---

[2] The federal jury awarded Dr. Warren $656,000.00 in her lawsuit against the PCSSD, this amount was later reduced by the trial court. The PCSSD has appealed this case to the Eighth Circuit Court of Appeals.

6

37.     Mr. Johnson was deposed on February 19, 2020, and he was truthful in his testimony.

38.     During Mr. Johnson's deposition testimony, he pointed out the apparent differences between Mills High School construction and the Robinson Middle School construction.

39.     Mr. Johnson reluctantly agreed that the Robinson Middle School construction was superior in quality than the Mills High School construction.

40.     Mr. Johnson also gave truthful testimony during the PCSSD's school unitary status hearing in July 2020 that was not complimentary of the district's efforts to comply with the facilities aspect of *Plan 2000*.

41.     Mr. Johnson's testimony during the PCSSD's school unitary status hearing angered members of the Board of Education, in particular Dr. Linda Remele, Alicia Gillen, and in some respects Superintendent Dr. Charles McNulty.

42.     Due to the plaintiff's testimony in federal court, his duties were curtailed, and some his responsibilities were taken away.

43.     On August 1, 2020, the plaintiff was advised that he would not be allowed to participate in the court ordered tour with Judge Marshall, the attorneys representing the school districts, the attorneys representing the McClendon Intervenors[3], and other district personnel.

44.     Upon information and belief, the plaintiff was not allowed to participate in the August 4, 2020 tour of the facilities (Robinson Middle School and Mills High School), by way of Dr. Linda Remele.

---

[3] On July 18, 2019, the name of the Intervenors was changed from Joshua Intervenors to McClendon Intervenors, consisting of Emily McClendon, Tamara Eackles, and Valerie Stallings. *See* **Doc. # 5501**.

7

45.     Due to the plaintiff's job title as the Executive Director of Operations, having responsibilities over the facilities maintenance and new school construction, the plaintiff was the most obvious person to have participated in the tour of these facilities.

46.     Furthermore, in November 2020, the plaintiff was told by Dr. McNulty that he could no longer attend the court ordered monthly desegregation meetings.

47.     The plaintiff had also proposed certain items to be placed in the budget for facilities upgrades and construction, but those were eliminated by Dr. McNulty in a continuing pattern of retaliation.

Sylvan Hills 501(c)(3) Loan

48.     Dr. Linda Remele is heavily involved in the Sylvan Hills' and Sherwood communities.

49.     Upon information and belief, while Dr. Remele served on the Board of Education for the Pulaski County Special School District, after having been elected in November 2016, she mainly advocated for the Sherwood and Sylvan Hills communities, where Sylvan Hills schools were located, and areas that are predominantly white, which are located in northern Pulaski County.

50.     As a matter of fact, Dr. Remele was a participant in a group of business leaders, and community leaders in the Sherwood and Sylvan Hills communities that was exploring and is still exploring the possibility of detaching those communities from the Pulaski County Special School District.

51.     Upon information and belief, then principal of Sylvan Hills High School – Tracy Allen, and Jason Young, principal of Sylvan Hills Elementary School, along with Dr. Linda Remele, and other business and community leaders created a 501(c)(3) organization for the alleged

8

purpose of raising money for improvements to the track and football stadium at Sylvan Hills High School.

52.     The group apparently borrowed $1,000,000.00 from FAB&T Bank of Jacksonville, Arkansas, and raised another $300,000.00.

53.     After coming onto the Board of Education for the Pulaski County Special School District in or about December 2016, Dr. Remele later directed Dr. McNulty to have the PCSSD to pay the balance of the loan in the amount of $711,000.00.

54.     When the plaintiff was hired as the Executive Director of Operations in August 2018, he was able to delve into the various construction projects with the PCSSD, and after reconstituting the construction budgets, he was able to save the district some $4,400,000.00.

55.     Once Dr. Remele realized that there was a surplus of $4.4 million dollars, she became much more aggressive in demanding that the PCSSD pay off the loan of the 501(c)(3) organization, which was in the amount of approximately $711,000.00.

56.     During a phone call with Mr. Allen and Dr. Remele on March 16, 2021, she was demanding that the PCSSD assume the loan of the 501(c)(3) non-profit in the amount of $711,000.00.

57.     Mr. Johnson explained to Dr. Remele that since the PCSSD did not take out the loan, and had no part in obtaining the loan, it would be illegal for the district to assume the loan; however, Dr. Remele was not having it, she was demanding that the plaintiff do whatever was necessary for the district to assume this loan and pay it. Dr. Remele told the plaintiff if he refused, then she would not support any construction projects that he wanted to bring before the board.

Discrimination in Pay

58.     When the plaintiff became employed by the PCSSD on or about August 9, 2018, in the position of Executive Director of Operations, having taken the place of Derek Scott, the plaintiff was hired in at a salary of $107,000.00, which was considerably less than his white predecessor.

59.     Also, the PCSSD had downgraded the Executive Director of Operations by two (2) grades, when the plaintiff was hired.

60.     Furthermore, the plaintiff was not allowed to have the support staff that his white predecessor had.  The plaintiff was forced to do more work than his white predecessor, while being paid considerably less.

61.     The PCSSD has demonstrated a pattern, practice, and custom of paying African Americans less than their white counterparts.

62.     For instance, when Dr. Janice Warren assumed the role of Interim Superintendent, she was paid some $25,000.00 less than her white predecessor Dr. Jerry Guess, and was paid some $20,000.00 less than her successor Dr. Charles McNulty.

IV.
Title VII – Race Discrimination

63.      The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 62, supra., inclusive as though set forth herein word for word.

64.     The plaintiff was subjected to less favorable terms and condition of his employment contract when the plaintiff was paid less than his white predecessor.

65.     The plaintiff was also discriminated against on account of his race when he was denied the support staff that he needed in order to perform his duties as the Executive Director of Operations.

66.     The above-mentioned acts of discrimination and disparate treatment on account of the plaintiff's race were committed in violation of Title VII of the Civil Rights Act of 1964 (as amended) and in violation of 42 U.S.C.S. § 1981 (as amended by the Civil Rights Act of 1991, which is codified at 28 U.S.C.S. § 1658).

V.

Retaliation

67.     The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 66, supra., inclusive as though set forth herein word for word.

68.     As a result of the plaintiff's opposition to discriminatory treatment, and his participation in protected activity, by having provide testimony in depositions and court proceedings, he was subjected to retaliatory treatment by the defendant.

69.     The plaintiff was demoted in status in having his job duties taken away from him, when he was not permitted to participate in the court ordered tours of the facilities that were under construction.

70.     The plaintiff was also prohibited from attending the monthly court ordered desegregation meetings after he gave his testimony in court.

71.     Due to the plaintiff's participation in court proceedings, he was demoted in status.

72.     The plaintiff also suffered lowered performance evaluations, and was subjected to unwarranted hostility from board members, and the superintendent.

VI.
Arkansas Whistle-Blower

73.     The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 72, supra., inclusive as though set forth herein word for word.

74.     In the plaintiff's role as the Executive Director of Operations, he is tasked with the responsibility to ensure that district funds are being spent in accordance with both state and federal laws in areas of construction and building maintenance.

75.     The plaintiff also had an obligation to ensure that the district in the construction of facilities, and the maintenance of its school properties were doing so in compliance with *Plan 2000*.

76.     The plaintiff also had a responsibility to provide truthful testimony whenever called upon to do so.

77.     In preparation for the PCSSD unitary status hearing which was scheduled for the month of July 2020, the plaintiff was called upon to provide testimony both in discovery and at the federal court trial.

78.     The plaintiff provided testimony that was truthful, but was harmful to the PCSSD in that the testified that the Mills High School Facilities were not equal to that of Maumelle High School nor to that of Robinson Middle School, which are schools in predominantly white areas of Pulaski County, Arkansas.

79.     As the Honorable D. Price Marshall noted:

The Court agrees with the Intervenors. Plan B was in good faith. Plan B's implementation was not. The fits and starts at Mills High School, and the favoritism toward the Robinson Middle project, did not demonstrate to the public, students, and parents that PCSSD was committed to Plan 2000 § H(1), as supplemented, and righting the District's prior wrongs on facilities. *Freeman*, 503 U.S. at 491. *Instead, it was more of the same: unequal facilities based on race.*

LRSD v. Arkansas, 664 F.3d at 753.  The many fixes in the last two years are commendable.  They are not, however, a complete cure for the resulting inequity.

Mills High School and Robinson Middle School are both excellent facilities.  But, if Mills High gets an A, Robinson Middle gets an A++.  Mills is superior in only two ways: its new stainless steel kitchen; and its magnificent auditorium, which is a smaller version of the singularly impressive Maumelle High School auditorium. Robinson Middle has no auditorium; it has a cafetorium.  In almost every other way Robinson Middle School is "superior," in Curtis Johnson's apt word, to Mills High School.   Robinson's walls are concrete block rathe than gypsum board; the classrooms are larger; every teacher has a classroom, while at Mills High five teachers are in rotation with other teachers for classrooms space; the entrance atrium is grander; the halls are wider with higher ceilings; its sports practice building is better; and Robinson has an *arena* that seats more than 2,000 people while Mills has a *gym* with a capacity of about 1,100.  Mills's [sic] maple floor is certainly better than Robinson's parquet.  That superiority must be cold comfort, though, to student athletes who are consistently among our State's best, but whose school cannot host tournament games because their gym is too small.

Little Rock School District v. Pulaski County Special School District, et al., United States District Court No. 4:82-CV-00866 DPM [**Doc. # 5730, pp. 29-30**] (emphasis added).

80.    In part due to the testimony of the plaintiff, and that of Dr. Janice Warren, the court ruled that the district had not complied with *Plan 2000* in facilities, and ruled that the district had not reached unitary status.

81.    The Court also required the PCSSD to "sore up" any remaining disparities that existed at Mills High School, which has resulted in the district having to spend an additional $19,000,000.00 to bring Mills up to par.[4]

82.    Due to the testimony that the plaintiff provided during the desegregation court proceedings, he has suffered adverse employment actions in the way of being demoted in status, subjected to hostility and abusive behavior, and as well as having his performance appraisal

---

[4] The parties are still in negotiations about what the additional construction should look like.  The PCSSD is in the process of getting architectural designs with the goal of having the renovations to start about a year later.

lowered by the superintendent, all in violation of the Arkansas Whistle-Blower Act, which is codified at Ark. Code Ann. § 21-1-603, *et seq.*

83.     Furthermore, in that the plaintiff was discriminated against based on his race and faced retaliation when he opposed discriminatory practices, he was deprived of his rights as guaranteed by the Fourteenth Amendment to the United States Constitution.

84.     The defendant has violated the plaintiff's constitutional rights, and have subjected him to discriminatory treatment as well as acts of retaliation, while acting under color of law, making this cause of action enforceable pursuant to 42 U.S.C. § 1983.

VII.
Procedural Requirement

85.     The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 84, supra., inclusive as though set forth herein word for word.

86.     On May 7, 2021, the plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), contending that he had been discriminated against in terms and conditions of his employment with the defendant, due to his race, sex, age and in retaliation for opposing discriminatory practices. **(See Charge of Discrimination attached herein as Plaintiff's Exhibit "A")**.

87.     In response to the Plaintiff's Charge of Discrimination that he filed with the EEOC, said agency issued him a "Determination and Notice of Rights" letter dated June 29, 2022[5], which *inter alia* gave the plaintiff the right to sue the defendant within 90 days from the date he received the above-mentioned letter.  **(A copy of said "Notice of Right to Sue" letter is attached to this complaint and is identified as Plaintiff's Exhibit "B")**.

---

[5] Although the letter is dated June 29, 2022, it was not received by the plaintiff until sometime after July 14, 2022.

14

88.     This cause of action is being brought within ninety (90) days of the plaintiff receiving his right-to-sue letter as referenced in paragraph 87 of this complaint.

89.     Due to the above-mentioned acts of discrimination, the plaintiff has suffered mental anguish, embarrassment, lost wages, all in a manner to be proven at trial.

90.     Furthermore, the defendant's acts of discriminating against the plaintiff due to his race and in retaliation, were done willfully, entitling the plaintiff to an award of punitive damages.

<u>JURY DEMAND</u>

91.     The plaintiff requests that this matter be tried before a fair and impartial jury of twelve (12) persons.

THEREFORE, the plaintiff is seeking the following relief for the above-described unlawful employment practices:

a.      declare that the plaintiff has been subjected to unlawful discriminatory practices;

b.      back pay;

c.      compensatory and punitive damages;

d.      the cost of prosecuting this action;

e.      attorney's fees;

f.      and for all other just, equitable, and legal relief.

Respectfully submitted,

PORTER LAW FIRM
The Catlett-Prien Tower Building
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
Email: Aporte5640@aol.com

15

By: _____

Austin Porter Jr., No. 86145

Dated this 7th day of October 2022.

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 493-2021-00849 |

and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| **MR. CURTIS A JOHNSON** | **(501) 772-2804** | **1968** |

Street Address / City, State and ZIP Code

**PO BOX 166677, LITTLE ROCK,AR 72216**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| **PULASKI COUNTY SPECIAL SCHOOL DISTRICT** | **15 - 100** | **(501) 234-2000** |

Street Address / City, State and ZIP Code

**925 E DIXON RD, LITTLE ROCK, AR 72206**

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

Street Address / City, State and ZIP Code

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **08-08-2018**  Latest **05-01-2021**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired on or about August 8, 2018, as Executive Director of Operations. I was paid less than my white predecessor with more responsibility. I was not allowed to hire the necessary management staff compared to my white predecessor. I was required to testify in the trial that was held July 14-31, 2020. After my testimony, I started to experience retaliation in the form of exclusion, harassment, and hostile work environment, which is preventing me from completing my job duties.

Around August 1, 2020, PCSSD Board Chair removed me from a federal judge tour of my facilities to block any further testimony. In November of 2020, I was removed from monthly meetings (Plan 2000) at the direction of the Superintendent. As such, it restricted the ability for me to perform my duties.

Due to Covid 19, the weekly facilities meetings were moved to virtual. After my testimony in federal court, the board chair demanded access to these meetings. After several hostile

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Curtis Johnson on 05-07-2021 12:44 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE (*month, day, year*) |

PLAINTIFF'S EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 493-2021-00849 |
| | | and EEOC |

*State or local Agency, if any*

confrontations by the Board Chair, I granted access to the Board Chair in March of 2021.  On March 16, 2021, the Board Chair demanded that I break the law and pay a loan off that was not generated by the district using taxpayer funds. If I didn't pay the loan off, I would not be allowed to perform my job. The board chair would not let my construction projects go before the full board for consideration.  I refused as I believed the request was unlawful.

I believe I was subjected to the above treatment because of my race, Black; sex, male; and in retaliation for testifying in a desegregation case in violation of Title VII of the 1964, as amended. and my age,52, in violation of the Age Discrimination in Employment Act of 1967, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Curtis Johnson on 05-07-2021 12:44 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Little Rock Area Office**
820 Louisiana St, Suite 200
Little Rock, AR 72201
(501) 900-6130
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 06/29/2022

**To:** Mr. Curtis A. Johnson III
PO Box 166677
LITTLE ROCK, AR 72216
Charge No: 493-2021-00849

EEOC Representative and email:       Tyrone Blanks
Investigator
tyrone.blanks@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 493-2021-00849.

On behalf of the Commission,

Digitally Signed By:Edmond Sims
06/29/2022
Edmond Sims
Acting District Director

