IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**CURTIS A. JOHNSON**                                                                                            **PLAINTIFF**

v.                              Case No. 4:22-cv-00977-KGB

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT**                              **DEFENDANT**

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Defendant, Pulaski County Special School District ("District"), by its attorneys, Bequette, Billingsley & Kees, P.A., respectfully submits this Reply Brief in Support of its Rule 56 Motion for Summary Judgment. For all the reasons discussed, Defendant's Motion for Summary Judgment should be granted.

**I.     PLAINTIFF'S TITLE VII CLAIMS ARE TIME-BARRED**

The threshold issue the Court must decide is whether Plaintiff Curtis A. Johnson's Title VII claims are barred by the statute of limitations. The answer is yes.

Under Title VII, a plaintiff must file a lawsuit within 90 days of receiving the right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000e-5(f)(1)). The 90-day limitation period is strictly construed. It begins to run on the date that the EEOC right-to-sue letter is received. *Hill v. John Chezik Imps.*, 869 F.2d 1122, 1124 (8th Cir. 1989). Here, the date for Johnson to file his complaint began to run on June 29, 2922. Courts strictly enforce this deadline, and equitable tolling applies only in exceptional circumstances. *See, e.g., McDonald v. St. Louis Univ.*, 109 F.4th1068 (8th Cir. 2024). Even if Plaintiff had extra time to file his Complaint—three days for mail or five days for email or Public Portal—it is still late. If Plaintiff received the letter five days after it was issued on June 29, 2022, which the law presumes, he was required to file his lawsuit by October 3, 2022. However, Plaintiff did not file this lawsuit until October 7, 2022. ECF Doc. 1.

The EEOC issued Johnson's right-to-sue letter on June 29, 2022. ECF Doc. 1, at 19. In fact, Johnson admits he received an email from Tyrone Blanks from the EEOC on June 29, 2022, with Johnson testifying in his affidavit "that a letter was enclosed, with [the] letter stating that my case was being closed out, and that I would later receive an email notification with the "Dismissal and Notice of Rights" letter. Plaintiff's Exhibit F, ¶ 6. This actual email from the EEOC is in the record and it clearly shows that Johnson not only received the email stating that his EEOC charge of discrimination was conducted, and a Letter of Determination issued, but the actual Letter of Determination was an attachment to the email. ECF Doc. 14-7. The actual email also clearly shows that Johnson was not informed that he "would later receive" the dismissal and notice of right to see letter, but the email clearly reads "Attached you will find a Letter of Determination." Plaintiff's Exhibit J. The June 29 email speaks for itself.

Johnson even goes further in his affidavit and admits that he understood the June 29, 2022, email to mean that "my case was being closed out." Plaintiff's Exhibit F, ¶ 6. The plain reading of the email, which Johnson admits receiving and himself included in the record (Plaintiff's Exhibit J), gave him notice that his EEOC charge of discrimination was conducted, "closed out," and the Letter of Determination was attached to the email. Regardless of whether Johnson opened the attached letter, the plain language of the email put Johnson on notice as of June 29, 2022, that the 90-day limitation period to file his complaint then began to run.

On July 14, 2022, Johnson appears to have followed up, asking about the letter. The EEOC emailed Johnson another copy of the right-to-sue letter, explaining that it should have already been delivered by mail but was being sent again as an email attachment as a courtesy. Plaintiff's Exhibit J. All this means is that on June 29, 2022, Johnson was sent the Determination Letter via email (and presumably by mail). However, the record evidence clearly reveals Johnson already received notice on June 29 and the notice of right to sue letter was attached to that email.

Plaintiff's Exhibit J.  Johnson's follow-up email on July 14, 2022, does not restart the clock; it only serves as a courtesy copy.  As detailed in the District's opening summary judgment brief, courts typically apply a presumption of receipt of the right to sue letter either 3 to 5 days after it is sent.  ECF Doc. 15, at 9 (citing legal authorities).  Johnson's July 14 email does not rebut this legal presumption.  Johnson has not provided any credible evidence to show that he did not receive the June 29 letter, either by mail or as an email attachment.

Further, Johnson did not provide any reason for his delay in accessing the email attachment.  He has neither pleaded nor demonstrated any exceptional circumstances that would warrant equitable tolling. The law is clear that the 90-day period begins when the right-to-sue letter is received, not when a plaintiff chooses to act on it.  *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984).  *See also Means v. Prince George's Family Crisis Ctr.*, 7 F.3d 40, 42 (4th Cir. 1993) (holding that the limitations period was triggered when claimant received her notice that she could pick up a letter at the post office, not when she actually picked up the letter).

Courts have held that the 90-day period begins to run when the email from the EEOC is received, even if the right-to-sue letter is included as a separate attachment or the respondent must then go access the EEOC portal to review the actual right-to-sue letter.  *See Lax v. Mayorkas*, 20 F.4th 1178, 1182 (7th Cir. 2021).  When a plaintiff is notified of a right-to-sue letter via an email directing them to the EEOC online portal, the plaintiff cannot "postpone the beginning of the 90-day clock to file a civil suit simply by refusing or neglecting to access the portal." *Mason v. Derryfield Sch.*, 2022 U.S. Dist. LEXIS 202424, 2022 WL 16859666, at *3 (D.N.H. Nov. 7, 2022) (citing *Lax*, 20 F.4th at 1181-82).  *See also Moyer v. Shirley Contracting Co., LLC*, No. 1:21-cv-00046 (AJT/MSN), 2021 U.S. Dist. LEXIS 156388, at *17 (E.D. Va. Aug. 18, 2021) (the plaintiff had knowledge that his EEOC charge was dismissed and the 90-day period started when

3

he was called by the EEOC investigator, although it was much later when the actual notice was received).

Here, it is unreasonable for Johnson to argue that the 90-day period should start on July 14 or later when he was clearly aware of the existence of the June 29 communication from the EEOC investigator and the attached determination letter. At that point, Johnson knew, or should have known, that the 90-day clock was already ticking, regardless of whether he attempted to access the attached notice letter. Furthermore, the absolute death knell for a tolling argument is that Johnson admits he received the June 29 communication from the EEOC that "my case was being closed out," although he claims he did not access the attached notice letter in the email. This admission squares with the vast body of case law holding that regardless of technical difficulties or plaintiff's failure to access the email attachments or access the EEOC portal, notice is given when the EEOC email is received. Johnson admits he received the June 29 email from the EEOC. This Court should not entertain Johnson's attempts to retroactively adjust the filing period based on a later email communication. To do so would unreasonably extend the statutory filing period, which is contrary to decades-old case law on point.

Unfortunately, Johnson's Title VII claims are time-barred, and as a result, they must be dismissed. *McDonald v. St. Louis Univ.*, 109 F.4th 1068 (8th Cir. 2024).

## II. PLAINTIFF HAS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

Before pursuing a claim under Title VII, a plaintiff is required to exhaust his administrative remedies by filing a timely charge with the EEOC. 42 U.S.C. § 2000e-5(e). If a plaintiff fails to comply with this mandatory prerequisite, he or she is barred from proceeding in federal court. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973).

Here, the District moved for summary judgment on the basis that Johnson failed to meet this mandatory prerequisite. ECF Doc. 14. As detailed in Argument Section I.B. of the District's

4

Memorandum Brief in Support of its Motion for Summary Judgment, Johnson filed his EEOC charge on May 7, 2021, but many of the acts he complains of—such as his initial salary setting in 2018, alleged denials of hiring support staff, and his 2020 unitary status testimony about disparities in school facilities—occurred well before the 180-day window preceding his EEOC filing. ECF Doc. 15, at 11–13.

Under the Supreme Court's decision in *AMTRAK v. Morgan*, 536 U.S. 101 (2002), any claims based on these earlier acts are time-barred. This is because Johnson failed to file a timely EEOC charge regarding each of these discrete acts. Additionally, Johnson has not filed any new or updated EEOC charges since May 7, 2021. The District's clear position in this litigation is that the Court may only consider events that took place between November 8, 2020 and May 7, 2021, when evaluating the timeliness of Johnson's Title VII discrimination and retaliation claims. ECF Doc. 15, at 11–13.

Critically, Johnson failed to present any argument challenging the District's position on the exhaustion of administrative remedies in his briefing opposing summary judgment. In fact, Johnson's opposition brief is totally silent on this fundamental point. "Failure to oppose a basis for summary judgment constitutes waiver of that argument." *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009). Consequently, Johnson has waived any argument related to exhaustion of remedies, and he has not challenged the District's position that his EEOC charge was untimely under *AMTRAK v. Morgan*. It was Johnson's responsibility to show that there were genuine issues of material fact in the record to preclude summary judgment, and he has failed to do so on this specific point. Johnson has not rebutted the District's evidence showing that he did not meet the legal requirement to exhaust his administrative remedies before filing this lawsuit. As a result, the District is entitled to judgment as a matter of law on Johnson's untimely Title VII claims.

### III.   PLAINTIFF CANNOT PROVE DISCRIMINATION BASED ON PAY DISPARITY

Johnson argues that he was discriminated against because he was paid less than his white predecessor, Derek Scott, even though Johnson had greater job responsibilities and lacked proper staff.  While Scott was paid $137,738, Johnson's initial salary was $107,038.  Johnson claims that his salary increase in July 2023 to $145,397, was a direct result of this lawsuit, which was filed in October 2022.  ECF Doc. 26, at 18.  Johnson says that he "has partly accomplished what he set out to do when he filed this lawsuit, which was to bring some type of parity with his income. However, he has not been made whole, because he has not gotten any type of back pay."  ECF Doc. 26, at 26.  Johnson provides no proof to support his claim that his pay increase was linked to this litigation.

As the plaintiff, Johnson must first establish *a prima facie* case of racial discrimination in regards to the pay disparity. In order to establish a *prima facie* case for race-based wage discrimination, Johnson must show that the District paid a lower wage to him than a director "who was performing equal work on a job which required equal skill, effort, and responsibility, and which was performed under similar working condition."  *See Lyoch v. Anheuser-Busch Cos., Inc.*, 139 F.3d 612, 616 (8th Cir. 1998) (citation omitted).  If Johnson can show a *prima facie* case, then the burden shifts to the District "to establish a legitimate, nondiscriminatory reason for taking the allegedly discriminatory action." *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 521 (8th Cir. 2010).  If the District articulates a nondiscriminatory reason for the alleged discriminatory action, then Johnson must prove that the District's articulated reason is actually pretext for discrimination. *See id*.  The burden of persuasion at all times remains with Johnson.  *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 777 (8th Cir. 1995).

Here, Johnson has not provided any evidence that other employees with comparable qualifications and responsibilities were paid more than he was. As the District argued in its opening brief, Derek Scott's salary was based on his unique qualifications and experience, and Johnson has not demonstrated that he and Scott were similarly situated in terms of qualifications or job duties. Scott had an engineering degree and significant experience managing a larger school district prior to the separation of the Jacksonville North Pulaski School District. The director role that Johnson took, in contrast, was adjusted after the district's split, which resulted in a reduced scope of job responsibilities and less facilities to manage, and did not require an engineering degree. Scott is not a valid comparator, and Johnson has identified no one else who performed similar job duties. Without any valid comparator evidence, Johnson's discrimination claim on the basis of race fails as a matter of law.

Additionally, the District has demonstrated that the initial pay differential between Johnson and Scott was justified by legitimate, nondiscriminatory reasons related to business needs. The Executive Director of Operations role was adjusted in April 2018 for valid reasons unrelated to race that included the severance of Jacksonville from the PCSSD. In fact, the Board set a lower pay range for this job before posting the open position in May 2018, indicating that Johnson's initial pay when hired in August 2018 was not due to racial discrimination.

As detailed in the District's opening brief, Johnson did receive significant pay raises each year he worked for the District except for one year. ECF Doc. 15, at 5. In October 2022, when Johnson filed his lawsuit, he was actually receiving the same salary that Scott had been earning at the time of his departure. ECF Docs 14-1; 14-16. Johnson contends that his salary was increased to match Scott's after he filed this lawsuit, implying that this pay raise is evidence of discrimination. However, raising a salary in response to a legal claim does not inherently suggest discriminatory intent in the initial salary decision.

Courts have recognized that salary adjustments can occur for a variety of reasons without implying that the original salary decision was discriminatory. Two recent cases from the Eighth Circuit Court of Appeals demonstrate this principle applied in the context of a summary judgment: *Schottel v. Neb. State Coll. Sys.*, 42 F.4th 976 (8th Cir. 2022) and *Mayorga v. Marsden Bldg. Maint*. LLC, 55 F.4th 1155 (8th Cir. 2022).

In *Schottel*, the court upheld a pay disparity between a male and female employee because the male employee had more relevant teaching and professional experience, which justified the salary difference. Like in *Schottel*, here the District has provided legitimate, non-discriminatory reasons for paying Johnson less than Scott. Scott had an engineering degree and extensive management experience in a larger district prior to the Jacksonville North Pulaski School District's split from PCSSD.

Similarly, in *Mayorga*, the court found that a pay differential was justified because the male comparators had greater technical skills and relevant experience. The court emphasized that prior experience is a legitimate basis for a salary difference. *Mayorga*, 55 F.4th at 1160. In this case, the District similarly relied on Scott's superior educational qualifications and experience when deciding his salary, which is a valid, non-discriminatory reason under Title VII for the pay differential.

In short, the initial pay difference between the two men was based on legitimate, nondiscriminatory factors, including the differing qualifications and responsibilities of Johnson and Scott. The timing of Johnson's raises is not evidence of discriminatory intent but rather was part of the District's efforts to manage salary issues, which is common in employment settings when faced with legal challenges. As in both *Schottel* and *Mayorga*, Johnson has not provided any evidence to show that the District's reasons for the initial salary and subsequent raises are pretextual. Instead, the record reflects that Scott's education and experience justified the higher

salary, and Johnson has failed to demonstrate that race played any role in the salary determination. The school board's decision to set the salary for the operations role at a lower rate was made before Johnson even applied for the position, which eliminates any argument that race played a role in determining his compensation.  Courts do not require identical qualifications and scope of job duties, but rather that the pay difference be based on legitimate business reasons, which the District has clearly demonstrated here.

## IV.     PLAINTIFF HAS NOT ESTABLISHED HIS RETALIATION CLAIMS

Johnson argues that after he testified truthfully in a unitary status trial about disparities in school construction projects, he experienced retaliation under Title VII and the Arkansas Whistle-Blower Act.  He says that his duties were diminished and that he was excluded from important meetings and tours related to the District's desegregation efforts.  ECF Doc. 26, at 23.

Under Title VII, a retaliation claim requires the plaintiff to show that he suffered a materially adverse employment action as a result of engaging in protected activity. *Warren v. Kemp*, 79 F.4th 967, 973 (8th Cir. 2023).  In *Warren*, the Eighth Circuit held that actions unrelated to the terms, conditions, or privileges of employment do not qualify as protected activity under Title VII.  In that case, Warren's reporting of disparities between facilities at Mills High School and Robinson Middle School as part of the Pulaski County Special School District's long running desegregation requirements did not involve an employment practice and therefore her reporting was not protected under Title VII.  The court emphasized that an employee's actions must directly relate to an employment practice to be protected under the statute.

The same legal principle that applied in *Warren* applies here.  Johnson's testimony during the 2020 unity status hearing in the desegregation case does not relate to an employment practice for the same reasons articulated in *Warren*.  Like Warren, Johnson relies on his actions in the desegregation case, which the Eighth Circuit has foreclosed as an employment practice under

9

Title VII.  Likewise, Johnson's opposition to the purchase of athletic facilities improvements at Sylvan Hills High School does not qualify as a protected activity under Title VII.  The purchase of athletic facilities was a financial decision made by the school board, after obtaining legal advice, and is unrelated to any employment practice.  Therefore, Johnson's opposition to the decision does not fall within the scope of Title VII.

Johnson's Title VII retaliation claim fails as a matter of law for a second reason.  Johnson's exclusion from monthly desegregation meetings and court tours does not constitute a material change in employment conditions. Federal courts have held that an adverse employment action must result in a significant change in employment status—such as a demotion, decrease in pay, or significant change in job duties—to be actionable under Title VII.  *See, e.g.*, *Presley v. Ohio Dep't of Rehab. & Corr.*, 675 F. App'x 507, 514 (6th Cir. 2017).  Johnson's exclusion from meetings or a single tour had no tangible impact on his pay, job responsibilities, or career prospects. Therefore, it does not rise to the level of a materially adverse employment action required for a retaliation claim under Title VII.

Moreover, Johnson has failed to show a causal connection between his testimony in the status hearing and the alleged retaliatory actions.  A plaintiff must show that the protected activity was the "but-for" cause of the adverse action, which Johnson has failed to establish here.  *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).  A significant amount of time passed between Johnson's testimony and his exclusion from meetings and a tour, which weakens any inference of retaliation.  Johnson has not provided direct evidence that the exclusion from meetings or tours was a result of protected activity.

Johnson also asserts that after testifying about unlawful redirection of funds meant for the construction of Mills High School to Robinson Middle School (favoring predominantly white areas) at the unity status, he was subject to retaliation in violation of the Arkansas Whistle-Blower

10

Act (AWBA). ECF Doc. 26, at 29–31. Yet as established already, Johnson did not suffer an adverse employment action because of his testimony. The District's exclusion of Johnson from the tours and meetings was based on administrative decisions related to the pandemic, not retaliatory intent. These meetings and tours were peripheral to Johnson's core duties, and there is no evidence to suggest that the District or its officials excluded him because of his testimony. Additionally, Johnson's trial testimony was part of his job duties as facilities director. The AWBA requires that a whistleblower report a violation of law or waste to an "appropriate authority." Ark. Code Ann. § 21-1-602(2)(A). The court was already scrutinizing the facilities under its ongoing desegregation supervisory authority. Johnson did not disclose any new or standalone instances of misconduct that were previously unknown to others or would remain unaddressed without whistleblower involvement. Consequently, the circumstances presented here do not fall within the ambit of the AWBA.

The District is entitled to judgment as a matter of law on Johnson's Title VII and AWBA retaliation claims.

## V.  CONCLUSION

For the foregoing reasons, Johnson's claims of race discrimination and retaliation fail as a matter of law. Specifically, Johnson's Title VII claims are time-barred, as his lawsuit was filed beyond the 90-day deadline following the receipt of his June 29, 2022, right-to-sue letter. The initial salary disparity between Johnson and his predecessor, Derek Scott, was based on legitimate, non-discriminatory factors such as Scott's superior educational qualifications and experience, the same type of factors that the Eighth Circuit recognized as legitimate in *Schottel* and *Mayorga*. Johnson has not demonstrated that he engaged in protected activity. His testimony in the desegregation case was merely part of his job duties for the District and was not a whistle-blowing activity.

11

Johnson has also failed to establish that his exclusion from desegregation meetings and facility tours constitutes a materially adverse employment action or that there was a causal link between his testimony and the alleged retaliatory actions. As a result, this Court should grant summary judgment in favor of the District and dismiss all of Johnson's claims with prejudice.

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax:    (501) 374-5092
Email: jbequette@bbpalaw.com
Email: ckees@bbpalaw.com
Email: pbrick@bbpalaw.com

By:         **Cody Kees**
        Jay Bequette, Ark. Bar No. 87012
        W. Cody Kees, Ark. Bar No. 2012118
        Phillip M. Brick, Jr., Ark. Bar No. 2009116

*Attorneys for Defendant*