IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**CURTIS A. JOHNSON**                                                    **PLAINTIFF**

**v.**                              **Case No. 4:22-cv-00977-KGB**

**PULASKI COUNTY SPECIAL SCHOOL**
**DISTRICT, A Public Body Corporate**                          **DEFENDANT**

## OPINION AND ORDER

Before the Court is defendant Pulaski County Special School District's ("PCSSD") motion for summary judgment (Dkt. No. 14). Plaintiff Curtis A. Johnson brings this employment discrimination and retaliation action against PCSSD, his employer, pursuant to 42 U.S.C. §§ 1981 and 1983, as well as pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*, and pursuant to Arkansas Code Annotated § 21-1-601 *et seq.* for alleged violations of the Arkansas Whistle-Blower Act ("AWBA") (Dkt. No. 1). Johnson alleges that PCSSD violated his rights under Title VII by subjecting him to unlawful racial discrimination and retaliation (*Id.*, ¶¶ 63–72). Likewise, Johnson alleges that PCSSD violated his rights under AWBA by retaliating against him for providing truthful testimony in a judicial proceeding in which PCSSD was a party (*Id.*, ¶¶ 73–84).

PCSSD filed this motion for summary judgment contending that no genuine dispute of material fact exists and that PCSSD is entitled to judgment on each of Johnson's claims as a matter of law (Dkt. No. 14). Johnson responded in opposition to the motion (Dkt. No. 24). PCSSD replied (Dkt. No. 28). For the following reasons, the Court grants PCSSD's motion for summary judgment (Dkt. No. 14).

## I.     Factual Background

PCSSD has filed a statement of undisputed material facts (Dkt. No. 16), and Johnson filed a response (Dkt. No. 25).  The Court draws the following undisputed facts from these filings and the record evidence.

On or about August 8, 2018, Johnson, a black male, was hired by PCSSD as the Executive Director of Operations ("EDO") (Dkt. Nos. 16, ¶ 1; 25, ¶ 1).  At the time he was hired, Johnson was classified at pay grade 21, with an annual salary of $107,038.00 (Dkt. Nos. 16, ¶ 2; 25, ¶ 2). Johnson's predecessor, Scott, was paid at pay grade 24, with an annual salary of $137,738.00 (Dkt. Nos. 16, ¶ 3; 25, ¶ 3).  Scott resigned from PCSSD on August 29, 2017, and the position was not filled until Johnson was hired the following year (Dkt. Nos. 16, ¶ 4; 25, ¶ 4).

The decision to lower the pay grade for the EDO position was made by the board of directors of PCSSD ("PCSSD Board") on April 18, 2018, nearly four months before Johnson was hired (Dkt. Nos. 16, ¶ 5; 25, ¶ 5).  This decision was based on business considerations, including the removal of the engineering degree requirement from the EDO job description, the reduced scope of the EDO's responsibilities following the separation of Jacksonville North Pulaski School District from PCSSD in 2017, and to align the position's pay with other executive cabinet members (Dkt. Nos. 16, ¶ 6; 25, ¶ 6).  The EDO application window was open from May 9, 2018, to June 5, 2018, offering a salary between $93,452.00 and $117,364.00 (Dkt. Nos. 16, ¶ 7; 25, ¶ 7).  A bi-racial committee interviewed six candidates for the EDO position, with Johnson being one of two finalists.  The committee unanimously recommended Johnson for the job after an in-person interview (Dkt. Nos. 16, ¶ 8; 25, ¶ 8).  Johnson has consistently received pay raises since he was hired (Dkt. Nos. 16, ¶ 10; 25, ¶ 10).  For the year 2018–2019, his annual salary was approximately $107,038.00 (Dkt. Nos. 16, ¶ 11; 25, ¶ 11).  For the year 2019–2020, Johnson's annual salary was

approximately $130,052.00 (Dkt. Nos. 16, ¶ 12; 25, ¶ 12).  For the year 2020–2021, Johnson's annual salary was approximately $132,004.00 (Dkt. Nos. 16, ¶ 13; 25, ¶ 13).  For the year 2021–2022, Johnson's annual salary was approximately $132,004.00 (Dkt. Nos. 16, ¶ 14; 25, ¶ 14).  For the year 2022 to 2023, Johnson's annual salary was approximately $137,284.00 (Dkt. Nos. 16, ¶ 15; 25, ¶ 15).  For the year 2024 to 2025, Johnson's annual salary was approximately $145,397.00 (Dkt. Nos. 16, ¶ 17; 25, ¶ 17).

In July 2020, Johnson testified during a three-week bench trial related to PCSSD's unitary status in a federal desegregation trial before the Honorable D. Price Marshall (Dkt. Nos. 16, ¶ 18; 25, ¶ 18).  As part of the trial, Judge Marshall conducted a facilities tour of PCSSD buildings at issue, and due to COVID-19 restrictions, PCSSD was allowed only one representative to participate in this facilities tour (Dkt. Nos. 16, ¶ 19; 25, ¶ 19).  Dr. Linda Remele, President of the PCSSD Board, was chosen as the PCSSD representative for this tour (Dkt. Nos. 16, ¶ 20; 25, ¶ 20).

PCSSD held regular meetings related to ongoing obligations under the desegregation case (Dkt. Nos. 16, ¶ 21; 25, ¶ 21).  In late 2020, Dr. Charles McNulty ("Superintendent McNulty"), the PCSSD superintendent, told Johnson that he was no longer needed for the monthly meetings (Dkt. Nos. 16, ¶ 21; 25, ¶ 21; 14-12, at 1).

In 2021, the PCSSD Board approved the assumption of payment obligations on a loan taken out by a non-profit organization related to athletic facilities at the PCSSD campus of Sylvan Hills High School (Dkt. Nos. 16, ¶¶ 22–25; 25, ¶¶ 22–24).  Johnson alleges he expressed concerns about the legality of PCSSD paying off the loan and that he opposed repayment of the loan (Dkt. Nos. 16, ¶ 23; 25, ¶ 23).

On May 7, 2021, Johnson filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation by PCSSD (Dkt. Nos. 16, ¶ 26; 25, ¶ 26). In 2022, the EEOC issued Johnson a "right-to-sue" letter (Dkt. Nos. 16, ¶ 27; 25, ¶ 27).

On October 7, 2022, Johnson filed this action (Dkt. Nos. 16, ¶ 28; 25, ¶ 28). On December 20, 2022, PCSSD answered Johnson's complaint and asserted that his complaint was filed untimely and is therefore barred by the statute of limitations (Dkt. Nos. 16, ¶ 29; 25, ¶ 29). PCSSD also asserted in its answer that Johnson has failed to exhaust his administrative remedies under Title VII (Dkt. Nos. 16, ¶ 29; 25, ¶ 29).

Johnson has never filed any additional charge with the EEOC or amended his complaint during the pendency of this action (Dkt. Nos. 16, ¶ 30; 25, ¶ 30).

## II.    Summary Of Arguments

Johnson alleges three counts against PCSSD in his complaint (Dkt. No. 1). Count I alleges that PCSSD is liable for racial discrimination against Johnson because Johnson was paid less than his white predecessor and because he was denied the support staff that he needed to perform his duties as EDO (*Id.*, ¶¶ 63–66). Count II alleges that PCSSD is liable for retaliation against Johnson for alleged retaliatory actions it took in response to his testimony in the desegregation proceedings before Judge Marshall (*Id.*, ¶¶ 67–72). Specifically, Johnson alleges that he was "demoted in status" by having "job duties taken away from him," namely in that he was not permitted to participate in the court ordered tours of PCSSD facilities and in that he was prohibited from attending the monthly court-ordered desegregation meetings (*Id.*, ¶¶ 69–70). Additionally, he alleges that he suffered lowered performance evaluations and was subject to "unwarranted hostility" from PCSSD Board members and the superintendent (*Id.*, ¶ 72). Count III alleges that

4

PCSSD is liable to Johnson under AWBA because of the adverse employment actions he suffered as a result of his truthful testimony in the desegregation proceedings (*Id.*, ¶¶ 73–84).

In its motion for summary judgment (Dkt. No. 14), PCSSD argues that it is entitled to summary judgment on all of Johnson's claims. First, PCSSD argues that Johnson's Title VII claims are time-barred because he failed to file his suit within 90 days of when the EEOC issued its right to sue letter and because he has failed to plead equitable tolling (Dkt. No. 15, at 9–10). Second, PCSSD argues that Johnson failed to exhaust his administrative remedies because he filed his EEOC charge more than 180 days after the alleged discrimination and retaliation claims accrued (*Id.*, at 11–13). Third, PCSSD argues that Johnson has failed to establish a *prima facie* case of Title VII racial discrimination because Johnson has failed to establish either that similarly situated employees were treated differently or that he has suffered an adverse employment action within the meaning of the statute (*Id.*, at 14–16). Fourth, PCSSD argues that Johnson has failed to make out a *prima facie* Title VII retaliation claim because he has not suffered an adverse employment action and because he did not engage in a protected activity within the meaning of Title VII (*Id.*, at 16–20). Finally, PCSSD argues that Johnson has failed to establish a claim under AWBA because he did not suffer an adverse employment action and because he did not report any violation of a law, rule, or regulation to an "appropriate authority" within the meaning of the AWBA (*Id.*, at 20–22).[1]

In his response in opposition to the motion for summary judgment, Johnson argues that PCSSD is not entitled to summary judgment on any of Johnson's claims. First, Johnson argues

---

[1] PCSSD also argues that it is entitled to summary judgment on a Title VII hostile work environment claim to the extent one has been made (Dkt. No. 15, at 13–14). The Court does not understand the complaint or any of Johnson's subsequent filings in this case to allege a hostile environment claim against PCSSD.

that his Title VII claims are not time-barred because, although the EEOC right to sue letter was dated June 29, 2022, Johnson did not actually receive the letter until July 14, 2022 (Dkt. No. 26, at 32–34). Second, Johnson asserts that PCSSD has failed to carry its burden of establishing the affirmative defense of failure to exhaust administrative remedies (*Id.*, at 34). Third, Johnson argues that he has established a *prima facie* case of racial discrimination because his white predecessor as EDO, Scott, was similarly situated and because Johnson was paid less than Scott despite the fact that Johnson was forced to assume the roles of Director of Safety and Security and Director of Transportation, given PCSSD's failure to fill these positions (*Id.*, at 22–28). Fourth, Johnson argues that he has established a *prima facie* retaliation claim because he suffered diminished duties in the form of being taken off school tours and not being allowed to participate in monthly desegregation meetings (*Id.*, at 30–32). Finally, Johnson asserts that he has successfully made out an AWBA claim because he suffered an adverse employment action in the form of not being allowed to participate in court-ordered tours of PCSSD facilities or participate in the monthly desegregation meetings (*Id.*, at 29).

## III.    Analysis

### A.    Summary Judgment Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Under such circumstances, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322. "In ruling on a motion for summary judgment '[t]he district court

must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'" *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923–24 (8th Cir. 2004) (alteration in original) (quoting *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Johnson Reg'l Med. Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Loc. 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citing *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987)).

## B.    Title VII Claims

### 1.    Statute Of Limitations

A suit filed under Title VII must be brought within 90 days after the EEOC gives notice of the employee's right to sue.  42 U.S.C. § 2000e-5(f)(1); *McDonald v. St. Louis Univ.*, 109 F.4th 1068, 1070 (8th Cir. 2024)).  "The clock starts ticking 'on the day the right to sue letter is received.'" *McDonald*, 109 F.4th at 1070 (quoting *Hill v. John Chezik Imps.*, 869 F.2d 1122, 1124 (8th Cir. 1989)).  When the issue is disputed, the employee is presumed to receive the notice by mail three to five days after mailing of the notice. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984); *Langford v. Wilkins*, 101 F. Supp. 3d 809, 820 (E.D. Ark. 2015); *Mack v. WP Co., LLC*, 923 F. Supp. 2d 294, 299 (D.D.C. 2013); *Nkengfack v. Am. Ass'n of Retired Persons*, 818 F. Supp. 2d 178, 181 (D.D.C. 2011).

Additionally, where notice is also provided digitally, the proverbial clock for the 90-day statute of limitations begins to tick "once a plaintiff and/or plaintiff's attorney is put on notice that there is a final agency decision, even if plaintiff and/or counsel do not actually receive or access the final decision until later." *Gatter v. CEP Am.-Mo., LLLP*, Case No. 4:23-cv-01532-SPM, 2024 WL 3100613, at *4 (E.D. Mo. May 23, 2024), *aff'd*, Case No. 24-2259, 2025 WL 900607 (8th Cir. Mar. 25, 2025); *see McDonald*, 109 F.4th at 1071; *Lax v. Mayorkas*, 20 F.4th 1178, 1182–83 (7th Cir. 2021).

Here, the record evidence is that the EEOC issued a Determination and Notice of Rights on June 29, 2022 (Dkt. No. 1, at 19). Johnson received an email from the EEOC Investigator, Tyrone Blanks, that same day with the subject line "Determination Letter" and which reads as follows:

> The investigation of your charge of discrimination has been conducted. Attached you will find a Letter of Determination. Please review carefully if you plan to pursue this matter further with the Department of Justice.

(Dkt. Nos. 14-7; 26-1, at 67). Attached to the email was a document titled "493-2021-00849Closure Notice-NRTS (83) (1).pdf" (Dkt. No. 26-1, at 67). Johnson acknowledges that he received this email on June 29, 2022, and—apparently in reference to the document attached to the email—avers in his affidavit "that a letter was enclosed, with [the] letter stating that my case was being closed out, and that I would later receive an email notification with the 'Dismissal and Notice of Rights' letter." (Dkt. No. 26-1, at 58 ¶¶ 6–7).

The letter attached to the email in the record is dated June 29, 2022 (*Id.*, at 61–62). The first paragraph reads as follows:

> This letter is to inform you the Commission is terminating the processing of your charge and gives notice of your right to file suit within 90 days. No further action will be taken by this office regarding your charge of discrimination. This determination concludes the processing of the charge by the EEOC, but it does not affect your right to sue on your own behalf. You may pursue the matter by filing

with the Federal District Court in the jurisdiction of the charge as explained in the Dismissal and Notice of Rights. You will receive an e-mail notification when the Dismissal and Notice of Rights has been uploaded into the Portal and available for you to download.

(*Id.*, at 61).

A little more than two weeks later, on July 14, 2022, at 1:22 p.m., the EEOC sent Johnson

an email from an email address shown as "no-reply@service.eeoc.gov" which reads as follows:

A new document was added to EEOC Charge No. 493-2021-00849, Mr. Curtis A. Johnson III v. PULASKI COUNTY SPECIAL SCHOOL DISTRICT. To view it, sign-in to the EEOC Public Portal.

(*Id.*, at 64).

Five minutes later, at 1:27 p.m., Johnson sent Blanks an email which reads as follows:

Just following up to the letter I received from you. It's been a couple weeks and I have not received the right to sue email you made reference to. It is my intent to move with a claim against PCSSD.

In a previous conversation with you, it was my understanding that retaliation and whistleblower concerns were established within my claim. Additionally, your team were working on the race and age discrimination.

Will my 90 days to file be based on your letter or the right to sue email. Please advise.

(*Id.*, at 65).

A little less than three hours later, at 4:12 p.m., Blanks responded as follows:

You should have received it in the mail. Nevertheless, here is a copy of the same.

(*Id.*, at 66). Attached to the email was a document entitled "493-2021-00849Closure Notice-NRTS

(83) (1).pdf" (*Id.*, at 67).

PCSSD argues that Johnson's suit is barred as untimely because Johnson failed to file the

instant lawsuit within 90 days of the EEOC's issuance of the Determination and Notice of Rights

(Dkt. No. 15, at 9–10). In response, Johnson acknowledges that he filed the instant lawsuit on

October 7, 2022, 100 days after the date of the EEOC's Determination and Notice of Rights (Dkt.

No. 26, at 32).  However, Johnson contends that his claims are not time-barred because he did not actually receive the Determination and Notice of Rights until July 14, 2022 (*Id.*, at 32–34).

It is true, as Johnson argues, that the application of the statute limitations turns on the date the employee actually receives notice of the final agency action, *see McDonald*, 109 F.4th at 1070, and that the record evidence indicates that the actual determination and notice of rights form was emailed to Johnson on July 14, 2022.  However, the record evidence also shows that Johnson received Blanks's letter, attached to the June 29, 2022, email, which explicitly stated that its purpose "is to inform you the Commission is terminating the processing of your charge and gives notice of your right to file suit within 90 days" (Dkt. No. 26-1, at 61).  Indeed, Johnson avers in his affidavit that he received the email and the letter and that, based upon the letter, he was waiting to receive a further email notification with the Determination and Notice of Rights letter (*Id.*, at 58, ¶ 6).

As noted, Eighth Circuit case law makes clear that the 90-day period begins when the employee or counsel for the employee receives notice that the EEOC has rendered a final agency decision as to the employee's charge of discrimination, not when the employee receives or reads the actual Determination and Notice of Rights letter.  Specifically, in *McDonald v. St. Louis University*, counsel for the employee, McDonald, received an email from the EEOC on May 10, 2022, stating that "a new document was added to" the employee's case file, along with a link that led to the Determination and Notice of Rights letter.  104 F.4th at 1070.  However, because McDonald's counsel had lost the password to the EEOC's Public Portal, he was unable to access the link and view the Determination and Notice of Rights letter.  *Id.*  On May 18, 2022, the EEOC again emailed McDonald's counsel with a "REMINDER" that there was an "Important Document Available" in the Public Portal and explaining that it "ha[d] made a decision regarding" the charge

of discrimination.  *Id.* (alteration in original).  Still without a password, McDonald's counsel did not access the Public Portal.  *Id.*

On June 21, 2022, counsel for McDonald emailed the EEOC asking for a right to sue letter. *Id.*  Finally, on June 28, 2022, the EEOC sent McDonald's counsel an email with the right to sue letter as an attachment to the email.  *Id.*  McDonald subsequently filed a lawsuit under Title VII on September 23, 2022—137 days after the May 10, 2022, email informing McDonald's counsel that a "new document" was added to the case file, and 87 days after the EEOC emailed the right to sue letter directly to McDonald's counsel on June 28, 2022.  *Id.*

The Eighth Circuit held that, for purposes of the statute of limitations, the 90-day period began when McDonald's counsel received the May 10, 2022, email because it provided a link to a document—namely the right to sue letter—that "adequately informed [Ms. McDonald] of her right to sue."  *Id.* at 1071. (quoting *Evans v. McCluskey*, 567 F.2d 755, 757 (8th Cir. 1977)). Although the Eighth Circuit acknowledged that McDonald's counsel was "unable—rather than simply unwilling—to receive the notice on the day he received it," *id.* (quoting *Lax*, 20 F.4th at 1182–83), it found this distinction irrelevant, noting that it "instead speaks to whether we should equitably toll the deadline."  *Id.*

Similarly, in *Gatter v. CEP America-Missouri, LLLP*, the EEOC issued a determination of charge and notice of right to sue on June 28, 2023.  2024 WL 3100613, at *3.  On July 6, 2023, counsel for the employee, Gatter, received an automated message from the EEOC, which read as follows:

> [The] EEOC has made a decision regarding charge number 560-2021-01899.  It is very important that you download and retain a copy of this document.  You may review this decision by logging into the EEOC Public Portal.

*Id.* at *4 (alteration in original).  Later that same day, Gatter's counsel emailed the EEOC Investigator asking for the document, explaining that counsel could not access it.  *Id.* at *3.  On

July 7, 2023, the EEOC Investigator emailed Gatter's counsel a copy of the determination of charge and notice of right to sue.  *Id.*  Gatter subsequently filed her lawsuit on October 5, 2023, exactly 90 days after her counsel received a copy of the determination of charge and notice of right to sue on July 7, 2023.  *Id.* at *4.

The district court determined that the 90-day period for Gatter to file suit began on July 6, 2023, when her counsel received the automated message from the EEOC providing notice that a new document was added to the EEOC's Public Portal.  *Id.* at *6.  The court found the automated message sufficient to put Gatter "on notice that the agency's final decision was available and could be accessed via the public portal."  *Id.*  The court found the inability of Gatter's counsel to access the document until July 7, 2023, irrelevant for purposes of the statute of limitations.  *Id.*  As such, because Gatter filed her suit 91 days after the receiving notice of the EEOC's final agency decision, the court found her claims were time-barred.  *Id.*  The Eighth Circuit subsequently affirmed the decision.  2025 WL 900607.

The instant case is much like *McDonald* and *Gatter*.  Undisputed record evidence shows that Johnson received an email from Blanks on June 29, 2022, with an attached letter that provided express notice that "the Commission is terminating the processing of your charge and gives notice of your right to file suit within 90 days" (Dkt. No. 26-1, at 61).  This letter "adequately informed [Johnson] of h[is] right to sue" and of the EEOC's final agency decision on his charge of discrimination.  *Evans*, 567 F.2d at 757.  As such, Johnson's 90-day period to file suit began on the date he received the email—June 29, 2022.  As such, Johnson's claims in the instant case, filed on October 7, 2022—100 days after receiving notice of his right to sue and of the EEOC's final agency decision—are time-barred under Eighth Circuit law.

2.      **Equitable Tolling**

"Equitable tolling is premised on the excusable neglect of the filing party, and preserves a claim after the filing period has expired." *Jackson v. Hennepin Healthcare Sys., Inc.*, 134 F.4th 1262, 1264 (8th Cir. 2025) (quoting *Shempert v. Harwick Chem. Corp.*, 151 F.3d 793, 797 (8th Cir. 1998)).   Application of the doctrine may be appropriate "when a claimant has received inadequate notice, when a motion for appointment of counsel was pending, when the court has led the plaintiff to believe that he had done everything required of him, or when affirmative misconduct on the part of the defendant has lulled the plaintiff into inaction." *Id.* (*Hallgren v. U.S. Dep't of Energy*, 331 F.3d 588, 590 (8th Cir. 2003)).   However, it is typically reserved for circumstances that are "truly beyond the control of the plaintiff." *Id.* (quoting *Hill*, 869 F.2d at 1124).

In this case, Johnson makes no mention of the doctrine either in his complaint or in response to the motion for summary judgment.  In any case, the record indicates that he would not be entitled to equitable tolling of the limitations period.  Johnson was provided with timely notice of his right to sue and of the 90-day deadline in Blanks's June 29, 2022, letter.  When on July 14, 2022, Johnson sought clarification as to the precise date that the 90-day period began, Blanks provided him with a copy of the Determination and Notice of Rights, which was dated June 29, 2022.  As such, Johnson's failure to file suit within the 90 days did not occur due to circumstances that were beyond his control or on account to any misconduct or failure on the part of either the EEOC or PCSSD.  Equitable tolling is thus inapplicable under these circumstances.  *See, e.g.*, *id.* at 1264 (refusing to apply doctrine where plaintiff filed suit one day late due to alleged computer glitch); *Gatter*, 2024 WL 3100613, at *6–7 (refusing to apply doctrine where plaintiff filed suit one day late due to inability to access EEOC document).

### 3.    Conclusion On Title VII

For all of these reasons, the Court grants PCSSD's motion for summary judgment as to Johnson's Title VII claims.  The Court observes that, even if Johnson's Title VII claims were not time barred, those claims would fail for the same reasons Johnson's claims brought pursuant to 42 U.S.C. §§ 1981 and 1983 fail.

### C.    Race Discrimination

In addition to Title VII, Johnson also brings his race discrimination claim pursuant to 42 U.S.C. §§ 1981 and 1983 (Dkt. No. 1, ¶¶ 1, 66, 84).  Employment claims brought pursuant to 42 U.S.C. § 1981 and—to the extent they are premised on violations of federal laws other than Title VII—§ 1983 are not subject to Title VII's procedural requirements, such as exhaustion of administrative remedies before the EEOC and the associated 90-day statute of limitations.  *See Henley v. Brown*, 686 F.3d 634, 642–43 (8th Cir. 2012*)* (discussing relationship between Title VII and § 1983 claims); *Wilson v. CFMOTO Powersports, Inc.*, Case No. 15-cv-03192-JRT-JJK, 2016 WL 912182, at *3 (D. Minn. Mar. 7, 2016) (citing *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 454–55 (2008)) ("[T]he Supreme Court has recognized that § 1981 claims are not subject to the same procedural and administrative requirements as Title VII claims.").

The legal standard for race discrimination claims is the same under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.  *See Kenyatta v. Bookey Packing Co., Div. of Swift & Co.*, 649 F.2d 552, 554 (8th Cir. 1981); *Carter v. Pulaski Cnty. Special Sch. Dist.*, Case No. 4:18-cv-00029-SWW, 2019 WL 386173, at *3 (E.D. Ark. 2019) (citing *Tipler v. Douglas Cnty.*, 482 F.3d 1023, 1027 (8th Cir. 2007)).  To establish a *prima facie* race discrimination claim under these statutes, a plaintiff must show:  (1) that plaintiff is a member of a protected class; (2) that plaintiff met the employer's legitimate expectations; (3) that plaintiff suffered an adverse employment action; and

(4) that the circumstances give rise to an inference of discrimination. *Scott v. Union Pac. R.R. Co.*, 595 F. Supp. 3d 758, 781 (E.D. Ark. 2022) (quoting *Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014)).  To survive summary judgment, the plaintiff "must point to enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive." *DePriest v. Milligan*, 823 F.3d 1179, 1186 (8th Cir. 2016) (quoting *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014)).  Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show a nondiscriminatory reason for the adverse employment action. *Macklin v. FMC Transp., Inc.*, 815 F.3d 425, 427 (8th Cir. 2016).  In determining whether an employment action was "adverse," courts must look to whether the plaintiff has suffered "some harm respecting an identifiable term or condition of employment." *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024)).

In this case, the parties dispute the third and fourth elements of the *prima facie* discrimination analysis.  PCSSD argues that Johnson cannot establish a *prima facie* case of race discrimination because there is no evidence indicating that PCSSD treated similarly situated employees not in the protected category differently from Johnson or that Johnson suffered an adverse employment action (Dkt. No. 15, at 14–16).  In response, Johnson argues that he was paid significantly less than his white predecessor, Scott, to whom Johnson alleges he was similarly situated, despite being given more duties and responsibilities than Scott (Dkt. No. 26, at 22–26).

The Court finds that, even when construing the evidence in the light most favorable to Johnson, no reasonable inference of racial discrimination arises from the record evidence.  Even assuming that Johnson and Scott were similarly situated, it is an undisputed fact that the lower pay scale for the EDO position was set by PCSSD months before Johnson even submitted an application for the position (Dkt. Nos. 16, ¶ 5; 25, ¶ 5).  The parties also do not dispute that PCSSD

made this decision based on business considerations (Dkt. Nos. 16, ¶ 6; 25, ¶ 6). As such, the Court sees no grounds upon which a reasonable factfinder could infer that Johnson was paid less than Scott on account of his race.[2]

These circumstances also distinguish this case from *Smith v. URS Corp.*, 803 F.3d 964 (8th Cir. 2015), upon which Johnson relies (Dkt. No. 26, at 24–26). Unlike here, in *Smith* the defendant hired a white employee for essentially the same position as the African American plaintiff at a higher salary *after* hiring the African American employee at a lower salary. *Id.* at 965. The employees held their respective positions at the same time in the same position but were paid significantly different salaries, thus creating an inference of discrimination. *Id.* at 971. In this case, Scott and Johnson did not hold the EDO position simultaneously, and it is undisputed that the pay scale for the EDO position was changed prior to Johnson even applying for the position.

That said, Johnson points to no other alleged comparators for purposes of his race discrimination claim in either his complaint or the briefing on the motion for summary judgment. Johnson has thus failed to establish a *prima facie* case of race discrimination.

For these reasons, the Court grants PCSSD's motion for summary judgment as to Johnson's race discrimination claim.[3]

---

[2] To the extent Johnson alleges that he had less support staff than Scott due to unfilled Director positions and other support positions that had been eliminated by PCSSD, Johnson provides no record evidence suggesting that those personnel decisions by PCSSD were made because of race or in any way connected to the identity of the person holding the EDO position (Dkt. No. 26, at 12, 23).

[3] For the same reasons, the Court rejects Johnson's contention that, because PCSSD has raised his salary above Scott's former pay grade during the period since this lawsuit was filed, he should be recognized as a prevailing party in this case (Dkt. No. 26, at 26–28).

### D.    Retaliation

#### 1.    Section 1981

As with his race discrimination claim, Johnson also brings his retaliation claims pursuant to 42 U.S.C. §§ 1981 and 1983 (Dkt. No. 1, ¶¶ 1, 66, 84).  The framework for employment retaliation claims is the same under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.  *See Warren v. Kemp*, 79 F.4th 967, 973 (8th Cir. 2023); *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011).  To establish a retaliation claim under Section 1981, a plaintiff must show:  (1) the plaintiff engaged in statutorily protected activity; (2) the plaintiff suffered an adverse employment action; and (3) that the engagement in a protected activity is the but-for cause of the adverse employment action.  *Warren*, 79 F.4th at 973.  Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show a nondiscriminatory reason for the adverse employment action.  *Tyler*, 628 F.3d at 986; *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).

For purposes of retaliation claims, an "adverse employment action" is one which "a reasonable employee would have found [] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Hester v. Dep't of Treasury*, 137 F.4th 684, 690 (8th Cir. 2025) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)).  Additionally, with respect to retaliation claims brought under § 1981, "an employee engages in a protected activity under § 1981 when the employee has opposed any practice made unlawful by Title VII involving race-based discrimination," although § 1981 protected activity also extends beyond Title VII to embrace contractual relationships outside the employment context.  *Warren*, 79 F.4th at 973.

In this case, PCSSD argues that Johnson cannot establish a *prima facie* case of retaliation because he did not engage in protected activity, he did not suffer an adverse employment action,

and there is no causal relationship between the alleged protected activity and the alleged adverse employment actions (Dkt. No. 15, at 16–20). Johnson responds by arguing that his testimony at the desegregation trial in 2020 constituted protected activity and that he suffered retaliation in the form of not being allowed to participate in monthly desegregation meetings or being able to participate in school tours (Dkt. No. 26, at 30–32).

Undisputed record evidence indicates that Johnson did not engage in protected activity within the meaning of § 1981. As noted, Johnson's retaliation claim is premised on the notion that he suffered retaliation for his truthful testimony in July 2020 at the desegregation trial. Johnson does not mention the substance of his testimony in the briefing on the motion for summary judgment and pleads in his complaint only that the testimony "was not complimentary of the district's efforts to comply with the facilities aspect of *Plan 2000*" (Dkt. No. 1, ¶ 40). The record indicates that Johnson testified as to the relative state of the facilities at Mills High School, which serves a predominantly African American community, and Robinson Middle School, which serves a predominantly white community, which the court considered in evaluating whether PCSSD had achieved unitary status (*see* Dkt. No. 14-11, at 28–30).

Decisive in this case is the Eighth Circuit's decision in *Warren v. Kemp*, 79 F.4th 967 (8th Cir. 2023). In *Warren*, the plaintiff, Dr. Warren, as interim superintendent of PCSSD, reported the disparities between Mills High School and Robinson Middle School in a status report to the district court presiding over the desegregation case. *Id.* at 971. The Eighth Circuit determined that Dr. Warren did not engage in protected activity within the meaning of Title VII because the disparity between the facilities did not relate to the "compensation, terms, conditions, or privileges of employment." *Id.* at 974 (quoting 42 U.S.C. § 2000e-2(a)(1)). As such, in reporting on the disparity between the facilities, Dr. Warren did not "oppose a discriminatory employment

practice" for purposes of Title VII. *Id.* Because the plaintiff presented her Title VII and § 1981 retaliation claims under a single theory, the Court dealt with the claims under the same standard. *Id.* at 974 nn. 1–2.

Here, as in *Warren*, Johnson's testimony regarding the disparity between Mills High School and Robinson Middle School was not made in opposition to an employment practice of PCSSD. As in *Warren*, the disparity between the facilities did not relate to the compensation, terms, conditions, or privileges of Johnson's employment at PCSSD. Additionally, as in *Warren*, Johnson presents his Title VII and § 1981 retaliation claims as a single retaliation theory (*see* Dkt. No. 26, at 30–32), so the Court, as in *Warren*, sees no basis for differentiating between the two statutes in its "protected activity" analysis. As such, the Court determines that Johnson did not engage in protected activity within the meaning of § 1981.[4]

Further, applying the rationale of *Warren*, the Court determines any alleged opposition expressed by Johnson to PCSSD's assumption of payment obligations on the athletic facilities improvements at Sylvan Hills High School for the purchase price remaining on an outstanding loan with the non-profit foundation does not constitute protected activity; it was not made in opposition to an employment practice of PCSSD.

Even if Johnson had engaged in protected activity, it is unclear from the record evidence whether he suffered a materially adverse employment action to support his retaliation claim. At most, the record indicates that Johnson was not selected to participate on a single court-ordered facilities tour in August 2020 (Dkt. No. 14-10), for which it is an undisputed fact that PCSSD was only allowed to send a single representative, and that on or around December 2020—nearly half a

---

[4] The Court notes that, although the issue of *Warren*'s applicability in this regard was raised in PCSSD's brief in support of its motion for summary judgment (Dkt. No. 15, at 17–18), Johnson makes no effort to distinguish the case in his response.

year after—Johnson was informed by Superintendent McNulty that Johnson would no longer be attending monthly desegregation meetings (Dkt. No. 14-12, at 1).[5] Even construing this evidence in the light most favorable to Johnson, the Court finds in the alternative that these alleged actions were not so adverse as would have dissuaded a reasonable worker from making or supporting a charge of discrimination. Indeed, even if being disinvited from the desegregation meetings constituted an adverse employment action, the nearly half-year period between Johnson's testimony at the desegregation trial in July 2020 and the notice that his attendance would no longer be required at the desegregation meetings in December 2020 negates any inference of retaliation based on temporal proximity, and no other basis for a finding of causation appears on the record before the Court. Johnson's § 1981 retaliation claim thus fails at every stage of the *prima facie* analysis.

As such, the Court finds that Johnson has failed to establish a *prima facie* case of retaliation under § 1981.

For these reasons, the Court grants PCSSD's motion for summary judgment with respect to Johnson's § 1981 retaliation claim.

## 2.    Section 1983

To establish a First Amendment retaliation claim under 42 U.S.C. § 1983,[6] a plaintiff must show that: (1) the plaintiff engaged in a protected activity; (2) the defendant took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity,

---

[5]    The complaint mentions that Johnson was subjected to "lowered performance evaluations" (Dkt. No. 1, ¶ 72), but the Court sees no evidence of this in the record. Johnson does not discuss this allegation in the briefing on the motion for summary judgment.

[6]    The Court construes Johnson's § 1983 retaliation claim as a First Amendment claim, in part because any § 1983 retaliation claim premised on a Title VII violation would, for reasons noted by the Court, be barred by the statute of limitations for Title VII claims.

and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020) (quoting *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013)). "The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for 'the exercise of a constitutionally protected right.'" *Spencer*, 738 F.3d at 911 (quoting *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001)).

As an initial matter, the Court notes that Johnson brings this lawsuit only against PCSSD; he does not purport to bring any claims against specific officials at PCSSD. As a local government entity, a school district such as PCSSD is amenable to suit under 42 U.S.C. § 1983 only if the plaintiff can show that PCSSD had an "official policy or widespread custom that violated the law and caused his injury." *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). As such, for purposes of the third element of his retaliation claim, Johnson must show that any adverse employment action taken was the result of a policy or custom of PCSSD. Johnson, however, makes no argument that PCSSD had a policy or custom, nor does Johnson argue that any alleged retaliation resulted from a policy or custom of PCSSD. Further, for the same reasons explained with regard to his § 1981 retaliation claim, even if Johnson demonstrated a policy or custom, it is unclear from the record evidence whether he suffered a materially adverse employment action to support his First Amendment § 1983 retaliation claim.[7]

For these reasons, the Court grants PCSSD's motion for summary judgment with respect to Johnson's § 1983 retaliation claim.

---

[7] Johnson's testimony at the desegregation trial likely qualifies as protected activity for First Amendment purposes. *See Lane v. Franks*, 573 U.S. 228, 231 (2014).

### E.    State Law Claim

The Eighth Circuit has observed that in the "usual case" where all federal claims are dismissed on a motion for summary judgment, "the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Starkey v. Amber Enters., Inc.*, 987 F.3d 758, 765 (8th Cir. 2021) (alteration in original) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  In the light of the Court's ruling on Johnson's federal claims, the Court declines to exercise supplemental jurisdiction over his remaining state law AWBA claim.  For these reasons, Johnson's AWBA claim is dismissed without prejudice.

### IV.    Conclusion

For the foregoing reasons, the Court grants PCSSD's motion for summary judgment (Dkt. No. 14).  The Court dismisses with prejudice the federal race discrimination and retaliation claims in Johnson's complaint (Dkt. No. 1), and the Court dismisses without prejudice the state law AWBA claim in Johnson's complaint (*Id.*).  The Court denies Johnson's request for relief (*Id.*). The Court denies as moot PCSSD's pending motion *in limine* (Dkt. No. 29).

It is so ordered this 25th day of September, 2025.


_____
Kristine G. Baker
Chief United States District Judge